FILED
2022 JAN 24 AM 11:38
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| **ANN S.,**<br><br>　　　　**Plaintiff,**<br><br>v.<br><br>**KILOLO KIJAKAZI,**[1]<br>**Acting Commissioner of Social Security,**<br><br>　　　　**Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br><br>**Case No. 2:20-cv-00841-JCB**<br><br><br>**Magistrate Judge Jared C. Bennett** |

　　Under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties in this case have consented to Judge Jared C. Bennett conducting all proceedings, including entry of final judgment.[2] Before the court is Plaintiff Ann S.'s ("Plaintiff") appeal of Acting Commissioner of Social Security Kilolo Kijakazi's ("Commissioner") final decision determining that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[3] After careful consideration of the written briefs and the complete record, the court concludes that oral argument is not necessary in this case. For the reasons stated below, the court reverses the

---

[1]  Kilolo Kijakazi is now the Acting Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), she has been substituted for Commissioner Andrew M. Saul as the Defendant in this action. ECF No. 21.

[2] ECF No. 11.

[3] 42 U.S.C. §§ 401-434.

Commissioner's decision and remands this action for further administrative proceedings consistent with this decision.

## PROCEDURAL BACKGROUND

Plaintiff alleges disability due to various physical and mental impairments. In February 2018, Plaintiff applied for DIB.[4] Plaintiff's application was denied initially[5] and upon reconsideration.[6] On January 22, 2020, Plaintiff appeared with counsel for a video hearing before an Administrative Law Judge ("ALJ").[7] On April 3, 2020, the ALJ issued a written decision denying Plaintiff's claim for DIB.[8] Plaintiff appealed the adverse ruling, and, on September 30, 2020, the Appeals Council denied her appeal,[9] making the ALJ's decision final for purposes of judicial review.[10] On November 25, 2020, Plaintiff filed her complaint in this case seeking review of the Commissioner's final decision.[11]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal

---

[4] ECF No. 18, Administrative Record ("AR ___") 175-83.

[5] AR 88-91.

[6] AR 93-95.

[7] AR 26-52.

[8] AR 9-25.

[9] AR 1-6.

[10] 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

[11] ECF No. 2.

2

standards were applied."[12] The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."[13] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[14] "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[15] "The [f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[16]

The aforementioned standards of review apply to the ALJ's five-step evaluation process for determining whether a claimant is disabled.[17] If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.[18]

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that [her] impairments would have more than a minimal effect on [her] ability to do basic work activities, [she] is not eligible for disability benefits. If, on the

---

[12] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).

[13] 42 U.S.C. § 405(g).

[14] *Lax*, 489 F.3d at 1084 (quotations and citation omitted).

[15] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).

[16] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (first alteration in original) (quotations and citation omitted).

[17] 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).

[18] 20 C.F.R. § 404.1520(a)(4).

other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.[19]

At step three, the claimant must show that her impairment meets or equals one of several listed impairments that are "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."[20] "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ."[21]

At the fourth step, the claimant must show, given her residual functional capacity ("RFC"), that the impairment prevents performance of her "past relevant work."[22] "If the claimant is able to perform [her] previous work, [she] is not disabled."[23] If, however, the claimant is not able to perform her previous work, she "has met [her] burden of proof, establishing a prima facie case of disability."[24]

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step."[25] At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine

---

[19] *Williams*, 844 F.3d at 750-51 (quotations and citations omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(ii).

[20] 20 C.F.R. § 404.1525(a); *see also* 20 C.F.R. § 404.1520(a)(4)(iii).

[21] *Williams*, 844 F.2d at 751.

[22] 20 C.F.R. § 404.1520(a)(4)(iv).

[23] *Williams*, 844 F.2d at 751.

[24] *Id.*

[25] *Id.*

"whether the claimant has the [RFC] to perform other work in the national economy in view of [her] age, education, and work experience."[26] If it is determined that the claimant "can make an adjustment to other work," she is not disabled.[27] If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," she is disabled and entitled to benefits.[28]

## ANALYSIS

Plaintiff asserts that the ALJ erred at step two of the sequential evaluation process when he concluded, without explanation, that Plaintiff's fibromyalgia was not a medically determinable impairment under Social Security Ruling ("SSR") 12-2p.[29] SSR 12-2p "provides guidance on how [the Commissioner] develop[s] evidence to establish that a person has a medically determinable impairment . . . of fibromyalgia . . . , and how [the Commissioner] evaluate[s] [fibromyalgia] in disability claims and continuing disability reviews under . . . the Social Security Act."[30] Under SSR 12-2p, to establish that fibromyalgia is a medically determinable impairment: (I) a physician must have diagnosed fibromyalgia; (II) the physician must have provided evidence described by either (A) the 1990 American College of Rheumatology ("ACR") criteria, or (B) the 2010 ACR Preliminary Diagnostic Criteria; and (III) the physician's diagnosis must not be inconsistent with other evidence in the record. Although Plaintiffs alleges that her impairment is cognizable only under the 2010 ACR criteria, both

---

[26] *Id.* (quotations and citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

[27] 20 C.F.R. § 404.1520(a)(4)(v).

[28] *Id.*

[29] ECF No. 22 at 4.

[30] SSR 12-2p, 2012 WL 3104869, at *1 (July 25, 2012).

5

criteria are briefly introduced below because the 2010 criteria borrows somewhat from the 1990 criteria.

      The 1990 ACR criteria, referenced in Section II (A), requires a claimant to show: (1) "[a] history of widespread pain – that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back) – that has persisted (or that persisted) for at least months," though the pain "may fluctuate in intensity and may not always be present" (2) "[a]t least 11 positive tender points on physical examination," provided these points are "found bilaterally" and "both above and below the waist"; and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded."[31]

      Alternatively, the 2010 ACR criteria, referenced in Section II (B), requires a claimant to show: (1) "[a] history of widespread pain" as defined above; (2) "[r]epeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs or co-occurring conditions were excluded."[32]

      Instead of addressing whether Plaintiff met the 2010 ACR criteria at step two of the sequential evaluation process in this case, the ALJ stated that "[t]he record shows diagnoses of

---

[31] *Id.* at *2-3.

[32] *Id.* at *3.

fibromyalgia,"[33] and then continued: "The preponderance of record evidence does not support section II (A) or (B). Thus, the claimant's alleged fibromyalgia is not a medically determinable impairment."[34] That two-sentence finding represents the full extent of the ALJ's analysis as to whether Plaintiff met the 2010 ACR criteria.

On appeal, Plaintiff asserts that the ALJ's conclusory analysis at step two is not supported by substantial evidence. Plaintiff maintains that the evidence in the record "satisfies the mandates of SSR 12-2p,"[35] and the ALJ's failure to explain what parts of SSR 12-2p were not satisfied by the "numerous" diagnoses of fibromyalgia in the record constitutes reversible error.[36]

The Commissioner maintains that the ALJ "reasonably" found that "Plaintiff's symptoms and medical findings did not meet the criteria" of SSR 12-2p.[37] Implicitly recognizing the ALJ's lack of explanation at step two, the Commissioner relies on *Davis v. Erdmann* for the proposition that the court "can uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."[38] According to the Commissioner, because the ALJ discussed evidence supporting his conclusion "[e]lsewhere in the decision,"[39] the ALJ's decision should be upheld.

---

[33] AR 15.

[34] *Id.*

[35] ECF No. 22 at 6. Plaintiff concedes she does not meet the Section II (A) criteria but contends the record evidence satisfies Section II (B).

[36] *Id.* at 6, 9.

[37] ECF No. 26 at 5.

[38] *Id.* (quoting *Davis v. Erdmann,* 607 F.2d 917, 919 n.1 (10th Cir. 1979)).

[39] *Id.* (citing AR 14-21, spanning the entirety of the ALJ's findings of fact and conclusions of law).

Although the court will neither reweigh the evidence nor substitute its judgment for that of the ALJ, the court must determine whether the ALJ's conclusions are supported by substantial evidence and whether the ALJ applied the correct legal standards.[40] When making this evaluation, the court is mindful that "[t]he ALJ's decision should [be] evaluated based solely on the reasons stated in the decision. 'Affirming [a] *post hoc* effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.'"[41] Having carefully considered the ALJ's decision and the rationale set forth therein, the court finds that the ALJ's conclusory statement that Plaintiff's fibromyalgia was not a medically determinable impairment within the criteria of SSR 12-2p is not supported by substantial evidence and the Commissioner's *post hoc* attempt to save the ALJ's decision is insufficient to affirm it.

At the outset, a careful reading of the ALJ's decision confirms that the ALJ neither overtly discusses nor mentions Plaintiff's fibromyalgia or the criteria in SSR 12-2p after concluding at step two of the sequential analysis that Plaintiff's fibromyalgia was not a medically determined impairment. Under even the most liberal reading of the ALJ's entire opinion, the court cannot construe it to provide any meaningful analysis that compares the medical evidence in the record to SSR 12-2p's requirements and finds that Plaintiff's repeatedly diagnosed fibromyalgia condition failed to meet the 2010 ACR criteria. Such analysis simply does not exist anywhere in the ALJ's decision. Therefore, because the court cannot tell what the ALJ

---

[40] *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

[41] *Robinson v. Barnhart*, 366 F.3d 1078, 1084-85 (10th Cir. 2004) (citations omitted).

considered in reaching his tersely-worded finding, the court cannot agree that the ALJ's determination is supported by substantial evidence.

Nevertheless, the Commissioner argues that support for the ALJ's step-two conclusion exists "elsewhere in the decision."[42] However, this argument is nothing more than a "*post hoc effort to salvage the ALJ's decision*" that this court cannot countenance.[43] Relying on general statements from elsewhere in the ALJ's decision, the Commissioner does what the ALJ did not by proffering an evaluation of the evidence in light of the requirements of SSR 12-2p. By illustration, the ALJ found in the context of determining the extent to which Plaintiff's alleged symptoms were consistent with the objective medical evidence: "Plaintiff 'retained a largely normal physical functional capacity.' While she had some tenderness in her wrists, examinations of her extremities were otherwise normal."[44] From this statement, the Commissioner argues: "Thus, Plaintiff failed to present evidence of widespread pain, which is defined as 'pain in all quadrants of the body . . . and axial skeletal pain . . . that has persisted (or that persisted) for at least 3 months.'"[45] In other words, the Commissioner's argument takes a statement from the ALJ that does not mention either fibromyalgia or SSR 12-2p, applies a heavy coat of a conspicuous *post hoc* gloss, and says that the ALJ's finding precludes Plaintiff from meeting the 2010 ACR criteria. However, the reality is that even if the court accepts the ALJ's statement on its face as

---

[42] ECF No. 26 at 5.

[43] *Robinson*, 366 F.3d at 1084-85

[44] ECF No. 26 at 7 (quoting AR 18); *see* AR 17-18.

[45] *Id.* (quoting SSR 12-2p, 2012 WL 3104869, at *3).

true, the ALJ's statement does not foreclose Plaintiff's claim of a medically determinable finding under the 2010 ACR criteria. "Normal physical *functional* capacity" is not the same as "Plaintiff suffers no widespread pain in all quadrants of the Body." People can maintain a functional capacity even through pain. Thus, the Commissioner's *post hoc* supplementation of the ALJ's analysis does not constitute substantial evidence here.

Beyond painting a thick *post hoc* gloss on what the ALJ actually said, in other instances, the Commissioner directly challenges evidence in the record and argues that Plaintiff's medical evidence relating to fibromyalgia is insufficient to satisfy SSR 12-2p.[46] Significantly, however, the Commissioner is unable to point to the *ALJ's analysis* of Plaintiff's fibromyalgia under the criteria of SSR 12-2p. In sum, the Commissioner's argument offers a discussion of what the Commissioner would have concluded given the selected medical evidence. But there is nothing to suggest that the rationale now offered by the Commissioner was the basis for the ALJ's conclusion.

Although the Commissioner accurately represents that a court "can uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," the court "may not supply a reasoned basis for the agency's action that the agency itself has not given."[47] Long-standing principles of administrative law require the court "to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations

---

[46] *Id.*

[47] *Davis v. Erdmann*, 607 F.2d 917, 919 n.1 (10th Cir. 1979) (citations omitted).

that attempt to intuit what the adjudicator may have been thinking."[48] Simply put, the court "cannot substitute [the Commissioner's] analysis of the record for the ALJ's lack of analysis."[49] In this case, having acknowledged that the medical records included "diagnoses of fibromyalgia," the ALJ provided only a conclusory statement and failed to explain why those diagnoses and the record as a whole failed to satisfy SSR 12-2p. As a result, this court is unable to meaningfully review the ALJ's determination that Plaintiff's fibromyalgia was not a medically determinable impairment under the guidance of SSR 12-2p.[50] The ALJ's failure to provide any explanation was error.[51]

Although the ALJ erred, that is not the end of the court's inquiry because the court must determine whether the ALJ's error was harmless. Here, the Commissioner relies on *Allman v. Colvin* for the proposition that "failure to find a particular impairment severe at step two is not

---

[48] *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) (citing *Chenery Corp.*, 332 U.S. at 196).

[49] *Ochsner v. Comm'r of Soc. Sec. Admin.*, No. 20-01683, 2021 WL 5936932, at *6 (D. Az. Dec. 16, 2021).

[50] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (providing that failure to provide the court "with a sufficient basis to determine that appropriate legal principles have been followed is [a] ground[] for reversal"); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("[B]are conclusion[s] [are] beyond meaningful judicial review.").

[51] *See, e.g., Gilbert v. Astrue*, 231 F. App'x 778, 784 (10th Cir. 2007) (remanding case for further proceedings where "the record . . . fail[ed] to demonstrate that the ALJ considered all of the evidence with respect to [the claimant's] fibromyalgia"); *Black v. Berryhill*, 2:17cv153, 2018 WL 1472525, *8 (D. Utah Mar. 7, 2018) (remanding for further consideration because ALJ's failure to explain his conclusion that Plaintiff's fibromyalgia diagnoses did not satisfy SSR 12-2p precluded the court from conducting meaningful review), *report and recommendation adopted*, 2018 WL 1468573 (D. Utah Mar. 23, 2018).

11

reversible error when an ALJ finds at least one other impairment is severe."[52] Generally, courts have recognized that that the ALJ's failure to find a particular impairment *severe* at step two may be harmless where the ALJ identified other severe impairments at step two, proceeded through the sequential evaluation, and considered all severe and non-severe impairments during the subsequent steps of the process.[53]

The error in this case, however, stemmed not from a step-two *severity* conclusion but from the ALJ's conclusion that Plaintiff's fibromyalgia was not a *medically determinable impairment*. This distinction is critical because in assessing a claimant's RFC, the ALJ considers only those impairments found to be medically determinable, even if not deemed severe.[54] Thus, by not finding that fibromyalgia was medically determinable, the ALJ foreclosed fibromyalgia's associated impairments from his later RFC analysis.

In light of the significantly different consequences that flow from a step-two failure to find an impairment *severe* versus a step-two finding that an impairment is *not medically determinable*, numerous courts have concluded that when a step-two error stems from the ALJ's

---

[52] ECF No. 26 at 9 (citing *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016)).

[53] *See, e.g., Casselbury v. Colvin*, 90 F. Supp. 3d 81, 94 (W.D.N.Y. 2015); *see also Smith v. Colvin*, 821 F.3d 1264, 1267 (10th Cir. 2016).

[54] 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' … when we assess your residual functional capacity."); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (requiring ALJ to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"); *see, e.g., Black*, 2018 WL 1472525, at *8 (explaining the "critical" distinction between failing to find an impairment severe compared finding an impairment not medically determinable).

decision that an impairment is not medically determinable the harmless error doctrine is inapplicable.[55] This distinction make sense because erring on the issue of severity at step two does not exclude the impairment from later consideration whereas erring on medical determinability surely does.

That is precisely what happened here. Once the ALJ concluded that Plaintiff's fibromyalgia was not a medically determinable impairment, in accord with the governing standards, the ALJ had no basis to consider—and the ALJ did not actually consider—Plaintiff's fibromyalgia or any fibromyalgia-related symptoms in formulating Plaintiff's RFC. Consequently, the court cannot say that the ALJ's error at step two—concluding without explanation that Plaintiff's fibromyalgia was not a medically determinable impairment—did not affect the ALJ's subsequent analysis.[56] More specifically, the court cannot say that the undiscussed evidence and diagnoses pertaining to Plaintiff's fibromyalgia could not possibly have affected the ALJ's conclusions about the severity of Plaintiff's symptoms, including pain,

---

[55] *Diaz v. Comm'r of Social Security*, No. 18-cv-6224P, 2019 WL 2401593, at *5 (W.D.N.Y. June 7, 2019) ("[T]he step two harmless error doctrine is inapplicable to a determination that an impairment is not medically determinable." (listing cases)); *see also Black*, 2018 WL 1472525, at *8.

[56] *See, e.g., Brown v. Colvin*, 205 F. Supp. 3d 1269, 1274-75 (D. Kan. 2016) (finding error not harmless where ALJ declined to find fibromyalgia a medically determinable impairment at step two, and "no evidence [showed] that Plaintiff's fibromyalgia was considered in evaluation of Plaintiff's claim at any later step in the process"); *see also, e.g., Vargas v. Saul*, 1:19cv299, 2020 WL 5521039, *7 (D. Idaho Sept. 14, 2020) ("If [claimant's] fibromyalgia had been properly considered, 'the ALJ may have found [claimant's] testimony regarding her pain, fatigue, and ability to function more credible, which may have impacted the RFC determination." (quotations and citation omitted)); *Butler v. Colvin*, 2016 WL 8232243, at *4-5 (E.D. Wash. Aug. 23, 2016) ("[B]y classifying [claimant's] fibromyalgia as non-medically determinable impairment . . . the ALJ excluded the effects of this condition when formulating [claimant's] RFC, rendering the ALJ's RFC finding suspect.").

and their limiting effects.[57] To reach that conclusion here would require mere speculation regarding the ALJ's analysis. Accordingly, remand is necessary for the ALJ to properly evaluate Plaintiff's fibromyalgia at step two, and if necessary, at the remaining steps of the sequential evaluation process.[58]

## CONCLUSION AND ORDER

For the reasons stated, the Commissioner's decision is reversed, and this matter is remanded for further administrative proceedings consistent with this Memorandum Decision and Order.

DATED January 24, 2022.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[57] *See, e.g., U.M..V. v. Berryhill*, 18-1202, 2019 WL 2393165, at *4 (D. Kan. June 6, 2019) ("The application of the standards in SSR 12-2p could conceivably alter the ALJ's conclusions about the severity of [claimant's] impairments and her resulting limitations, or the weight the ALJ chooses to attach to [claimant's] testimony or non-medical opinions."); *see also, e.g., Elliott v. Astrue*, 507 F. Supp. 2d 1188, 1195 (D. Kan. 2007) (remanding for ALJ to determine whether fibromyalgia was medically determinable impairment and, if so, to take it into account).

[58] The Commissioner's additional argument, that any error is harmless because Plaintiff failed to show that her limitations from fibromyalgia exceeded the limitations of the impairments that were considered by the ALJ, is likewise unpersuasive. "[T]o the extent a harmless error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against *post hoc* justification of administrative action." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *see also Dunworth v. Comm'r of Soc. Sec.*, No. 19-cv-2, 2020 WL 4432570, at *4 (W.D.N.Y. July 30, 2020) ("Even if the ALJ considered similar symptoms when calculating [claimant's] RFC, remand is necessary for the ALJ to properly evaluate [claimant's] fibromyalgia at step two and the remaining steps of the sequential process.").